**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION**

| | | |
|---|---|---|
| **RHONDA M. WOODS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No.: 6:12-cv-00014** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **COMMISSIONER OF** | ) | **By: Hon. Robert S. Ballou** |
| **SOCIAL SECURITY ADMINISTRATION,** | ) | **United States Magistrate Judge** |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Rhonda M. Woods ("Woods") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for supplemental security income ("SSI") under the Social Security Act, ("Act"), 42 U.S.C. §§ 1381-1383f.  Specifically, Woods alleges the Commissioner (1) improperly weighed the opinion of her treating physician and therapist, and (2) erred in using her work history to assess her credibility.

This court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B).  The parties have fully briefed and argued all issues, and the case is now ripe for decision.  The case is ripe for decision.  I have carefully reviewed the administrative record, the legal memoranda, and the applicable law. I conclude that substantial evidence supports the Commissioner's decision and that the plaintiff's allegations of error are without merit.  Accordingly, I **RECOMMEND DENYING** Woods's Motion for Summary Judgment (Dkt. No. 12), and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 14).

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits.  Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001).  This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that the claimant failed to demonstrate that she was disabled under the Act.  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted).  The final decision of the Commissioner will be affirmed where substantial evidence supports the decision.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The plaintiff bears the burden of proving that she suffers under a "disability" as that term is interpreted under the Act.  English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work.  Rather, a claimant must show that her impairments prevent engaging in any and all forms of substantial gainful employment given the claimant's age, education, and work experience.  See 42 U.S.C. § 423(d)(2).

The Commissioner uses a five-step process to evaluate a disability claim.  Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002).  The Commissioner asks, in sequence, whether the

claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment;[1] (4) can return to her past relevant work; and if not, (5) whether she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

In cases such as this, where the claimant has submitted additional evidence to the Appeals Council, and the Appeals Council considered that evidence, this court must review the record as a whole, including the new evidence, to determine whether substantial evidence supports the Commissioner's findings. Wilkins v. Secretary, Dep't of Health and Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991).

## STATEMENT OF FACTS

### Social and Vocational History

Woods was born July 22, 1971. R. 17. She has a GED, R. 30, and has worked as a deli worker and a packager, both of which are medium and unskilled jobs. R. 53. Woods reports that she is depressed about half of the time. During those periods of depression, she is unable to do

---

[1] A "listed impairment" is one considered by the Social Security Administration "to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a).

any shopping or cleaning, R. 43-46, but when she is not in a depressed state she is able to be social, take care of her pets, and perform chores. R. 21-22.

**Claim History**

Woods protectively filed her current claim for SSI on April 28, 2010, claiming a disability onset date of December 15, 2008. R. 10. The Commissioner denied Woods's disability application initially and upon reconsideration. R. 78-89, 92-103. The ALJ held a hearing on July 7, 2011, at which Woods, represented by counsel, and a vocational expert testified. R. 25-59.

The ALJ denied Woods's claims on September 9, 2011. R. 10-18. In his opinion, the ALJ found that Woods suffered from the severe impairments of "spine disorders (lumbago), affective disorder, personality disorder, and alcohol and substance addition disorder." R. 12. The ALJ found that none of these impairments, either individually or in combination, met or medically equaled a listed impairment. R. 12-14. The ALJ further found that Woods has an RFC to perform light work, but was limited to a low stress work environment, involving no interaction with the public and only occasional interaction with co-workers and supervisors. R.14-17. The ALJ found that Woods is unable to perform any of her past relevant work, but that she can perform work as a maid, a router, or a marker of price tags, each of which exist in significant numbers in the national economy. R. 17-18. As such, the ALJ concluded that Woods is not disabled. R. 18.

Woods filed an appeal with the Social Security Administration's Appeals Council and submitted additional evidence in her request for review. On February 1, 2012 the Appeals Council denied Woods's request for a review of the ALJ's decision, thereby rendering the decision of the ALJ the final decision of the Commissioner. R. 1-5. On March 5, 2012, Woods filed her complaint in this court seeking judicial review of the ALJ's decision (Dkt. No. 3).

## ANALYSIS

Woods argues that the Commissioner erred in (1) giving improper weight to the opinions of her treating physician, Dr. Michael Judd, and therapist, Barbara Rogers, LPC, and (2) in using her work history to assess her credibility. I find substantial evidence supports the weight given to the opinions of Dr. Judd and Ms. Rogers, and that the ALJ did not err in using Woods's limited work history in his assessment of her credibility.

### Treating Physician

A physician, psychologist, or other acceptable medical source is considered a treating source when that source "provides or has provided the claimant with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with the claimant." Meyer v. Astrue, 662 F.3d 700, 705 n.1 (4th Cir. 2011) (citing 20 C.F.R. § 404.1502). A treating physician's opinion is not automatically entitled to controlling weight. Treating physicians' opinions are given controlling weight only if they are supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with other substantial evidence in the record. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations…."); Social Security Ruling ("SRR") 96-2p.[2]

---

[2] "Social Security Rulings are interpretations by the Social Security Administration of the Social Security Act. While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995) (citing Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989)).

When determining whether a treating physician's opinion is to be given controlling weight, it is appropriate for the ALJ to consider the evidence in support of the opinion and to determine the opinion's consistency with the record as a whole. 20 C.F.R. § 404.1527(c)(2); SSR 96-2p. The ALJ must consider a number of factors regarding the treating physician's opinion, including whether the physician has examined the applicant, the existence of an ongoing physician-patient relationship, the diagnostic and clinical support for the opinion, the opinion's consistency with the record, and whether the physician is a specialist. 20 C.F.R. §§ 404.1527(c), 416.927(c). Generally, whenever an ALJ does not give the treating physician's opinion controlling weight, the ALJ is required to give specific reasons for the weight given to the treating physician's medical opinion and those reasons must be supported by the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); SSR 96-2p.

The ALJ examined Dr. Judd's opinion, R. 269-70, and gave it "less weight." R. 16. The ALJ did not give this opinion controlling weight because he found that Dr. Judd's findings were "not consistent with the other medical evidence of record as a whole." R.16. Dr. Judd completed a checklist medical source statement of Woods's mental ability to work related activities on January 22, 2010, in which he found that Woods is unlimited in her ability in her ability to understand, remember, and carry out short, simple instructions. R. 269. He further found that she has a good ability (i.e. could satisfactorily perform most of the time) to remember locations and work-like procedures, sustain an ordinary routine without special supervision, make simple work-related decisions, adhere to basic standards of neatness and cleanliness, be aware of normal hazards and take appropriate precautions, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of others. Dr. Judd also found that Woods has a fair ability (i.e. could satisfactorily perform some of the time) to

understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual, work with or near others without being distracted by them, complete a normal workday or workweek, perform at a consistent pace, interact appropriately with the public, accept instruction and respond to criticism appropriately, get along with co-workers and peers, and respond appropriately to changes in the work setting. R. 269-70.

Much of Dr. Judd's report was adopted by the ALJ in determining Woods's RFC, which limited Woods to light work in a "low stress work environment free of fast-paced production requirements and involving only occasional work-related decisions and work place changes . . . with no interaction with the public and no more than occasional interaction with co-workers, and supervisors; but not many at a time." R. 14,16.

To the extent that Dr. Judd's opinion was not adopted, substantial evidence supports giving those findings less weight. On February 4, 2010, less than two months after Dr. Judd rendered his opinion, Janet Gardner, LCSW, described Woods as having a cooperative attitude, good attention, a degree of awareness of surroundings within normal limits, an euthymic mood, good-fair insight, fair judgment, low aggression, moderate anger control and good impulse control. R. 275. Ms. Gardner saw Woods monthly until May, 2010, and made the same findings each time. R. 271-74.

On January 11, 2011, Woods admitted herself to Virginia Baptist Hospital complaining of increasing depressive symptoms over several weeks prior and suicidal thinking. Woods reported that she "had been feeling reasonably good up until several weeks ago." Dr. Randall Scott found Woods pleasant and cooperative, but clearly depressed. R. 324. Dr. Scott noted that Woods had been seeing Ms. Gardner, but that Ms. Gardner has left her practice and that Woods

had not yet received a new counselor.  R. 325.  Woods's mood improved fairly significantly during her hospitalization.  R. 322.  Dr. Scott set a course of follow-up psychiatric treatment and, upon determining Woods was sufficiently safe and stable to do so, he discharged her on January 13, 2011.  R. 322-23.

On January 14, 2011, Woods established care with Barbara H. Rodgers, LPC.  R. 347. Throughout counseling, Ms. Rodgers described Woods as having a cooperative attitude, good attention, a degree of awareness of surroundings within normal limits, an euthymic mood, good-fair insight, fair judgment, low aggression, moderate anger control, suicidal thoughts but no plan, and good impulse control.  R. 331, 333, 335, 337, 340, 341, 344, 347.  Finally, in June, 2011, Woods saw Nurse Laura Mann, FNP, who described Woods as having a bright affect, good insight, appropriate thought process, good eye contact, and no thoughts of harming herself or others.  349-50.  The medical record therefore reflects that Woods has responded well to therapeutic counseling and, as such, supports the limited weight the ALJ assigned to Dr. Judd's functional findings.

In addition to the medical record, the opinions of the state agency physicians support both the weight the ALJ assigned to Dr. Judd's checklist opinion and his ultimate conclusion.  Drs. Michael Hartman and Joseph Duckwall examined the records and each found that Woods's conditions did not result in limitations that would prevent her from performing her past work as a packer.  R. 88–89, 103.  The ALJ found that these opinions were consistent with the record as a whole and assigned them "the greatest weight."  R. 16.  Based on the record, the ALJ was entitled to assign the weight he gave to the opinions of the various medical experts.  As such, he did not err by assigning Dr. Judd's checklist opinion limited weight.

Woods argues that when a checklist opinion does not agree with the medical records, it is the ALJ's responsibility to follow up with the author to find more information. It is true that Social Security hearings are non-adversarial and that the ALJ has a duty to develop the record. See e.g., Jones v. Astrue, CIV.A. CBD-09-2314, 2010 WL 4923294, at *11 (D. Md. Nov. 29, 2010) (citing Walker v. Harris, 642 F.2d 712, 714 (Cir. 4th 1981)). This duty is discharged, however, so long as "the record is adequate to make a determination regarding a disability claim." France v. Apfel, 87 F. Supp. 2d 484, 490 (D. Md. 2000); cf. Parker v. Astrue, 792 F. Supp. 2d 886, 895 (E.D.N.C. 2011) (noting it is clear that an ALJ's duty to re-contact a treating source "arises only when the evidence as a whole is inadequate to determine the issue of disability").

In this case, the record was sufficient for the ALJ to make a ruling. Although the ALJ found that the checklists did not agree with the medical records, there is no indication that the medical records were incomplete or insufficient.

**Counselor's Opinion**

As a licensed clinic social worker, Ms. Rodgers is not an acceptable medical source as defined by the Act. 20 CFR §§ 404.1527(c), 416.927(c) (defining acceptable medical sources as licensed physicians, licensed or certified psychologists, and—for limited purposes—licensed optometrists, licensed podiatrists, and qualified speech-language pathologists). Nevertheless, the ALJ "has a duty to consider all of the evidence available in a claimant's case record, includ[ing] such evidence provided from 'other' nonmedical sources" such as licensed clinic social workers. Ingle v. Astrue, 1:10CV141, 2011 WL 5328036, at *3 (W.D.N.C. Nov. 7 2011)(citing Social Security Ruling ("SSR") 06–03p; 20 CFR §§ 404.1513(d), 416.913(d)). Evidence from these non-acceptable medical sources cannot be used to establish the existence of a medically

determinable impairment; nevertheless, "such sources may provide evidence, including opinion testimony, regarding the severity of the claimant's impairments and [how] such impairment[s] affect the individual's ability to function." Id. (citing SSR 06–03p; 20 CFR §§°404.1513(d), 416.913(d)); see also Ledbetter v. Astrue, 8:10–CV–00195–JDA, 2011 WL 1335840, at *10 (D.S.C. April 7, 2011) ("[O]pinions from medical sources, even when not 'acceptable medical sources,' are important and should be evaluated on key issues such as impairment severity and functional effects." (citing SSR 06–03p)).

To determine the weight given to the opinion of a source who is not an "acceptable medical source" as defined by the Act, the ALJ must consider: (1) the length of time the source has known the claimant and the frequency of their contact; (2) the consistency of the source's opinion with the other evidence; (3) the degree to which the source provides supportive evidence; (4) how well the source explains his or her opinion; (5) whether the source has an area of specialty or expertise related to the claimant's impairments; and (6) any other factors tending to support or refute the opinion. Beck v. Astrue, 3:11-CV-00711, 2012 WL 3926018, at *12 (S.D. W. Va. Sept. 7, 2012) (citing SSR 06–03p).

The ALJ found that Ms. Rodgers opinions, R. 316-17, 357-58, should be given less weight because they were not consistent with the medical records. R. 16. On November 21, 2011, Ms. Rodgers found that Woods had "no useful ability to function" in relation to a variety of tasks, including understanding, remembering, and carrying out detailed instructions, maintaining attention and concentration for extended periods, completing a normal workday or workweek, and traveling in unfamiliar places or using public transportation. R. 357-58. She also found that Woods did fairly well remembering locations and work procedures, performing activities with a regular schedule, working with others without being distracted, making simple

work related decisions, performing at a consistent pace, interacting appropriately with the public, accepting instructions, maintaining socially appropriate behavior, maintaining basic neatness and cleanliness, responding to changes in the work setting, and setting realistic goals. R. 357-58. Finally, she found that Woods did a good job at understanding and carrying out simple instructions, asking simple questions, and taking appropriate precautions for normal hazards. R. 357-58.

Ms. Rodgers met with Woods frequently and the record contains extensive treatment notes from January 14, 2011 through June 20, 2011. R. 329-49. These notes consistently show that Woods was cooperative, had good attention, low aggression, moderate anger control, and good impulse control. R. 331, 333, 335, 337, 339, 344, 345, 347. The ALJ properly evaluated these treatment notes and incorporated them into the RFC. These notes do not support the severity of the impairment described in Rodgers's opinions, and thus there is substantial evidence supporting the ALJ's decision to give her statements less weight. Nurse Mann's treatment notes of June 20, 2011 further support the weight given to Ms. Rogers's opinion. 349-50. Finally, the opinions of the State agency physicians provide yet further support to the weight the ALJ assigned to the non-acceptable medical source opinions of Ms. Rogers. R. 88–89, 103.

**The ALJ's Credibility Assessment**

The ALJ considered Woods to be "not fully credible," in part because of "the absence of a substantially gainful work history." R. 14-15. Under 20 C.F.R. § 416.929(c)(4), when evaluating symptoms, the Commissioner will "consider all of the evidence presented," including evidence regarding the prior work record. This, however, was only one factor in the ALJ's credibility assessment, which also included the ALJ's assessment of the objective medical evidence of record. R. 15. Furthermore, it is proper for an ALJ to consider work history when

evaluating credibility. See, e.g., Branham v. Astrue, 6:11-CV-00027, 2013 WL 1010443, at *8 n.3 (W.D. Va. Mar. 14, 2013) (noting that the ALJ "questioned whether the reason Plaintiff is not working is solely due to her impairments, given the fact that Plaintiff worked only sporadically or on a limited basis even before her alleged disability date").

Credibility determinations are emphatically the province of the ALJ, not the court, and courts normally should not interfere with these determinations. See, e.g., Chafin v. Shalala, No. 92-1847, 1993 WL 329980, at *2 (4th Cir. Aug. 31, 1993) (per curiam) (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) and Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964)); Melvin v. Astrue, 6:06 CV 00032, 2007 WL 1960600, at *1 (W.D. Va. July 5, 2007) (citing Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989)). It is part of the ALJ's prerogative as a fact finder to consider the evidence as a whole in determining a claimant's credibility. Where, as here, the ALJ's credibility determination is supported by substantial evidence, it should not be disturbed. See Johnson v. Barnhart, 434 F.3d 650, 658-59 (4th Cir. 2005) (per curiam) (citing Craig, 76 F.3d at 589).

## **RECOMMENDED DISPOSITION**

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The clerk is directed to transmit the record in this case to the Honorable Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication

of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection.

Entered: August 12, 2013

/s/ Robert S. Ballou

Robert S. Ballou
United States Magistrate Judge